# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:13-cr-00022 |
| v. | MEMORANDUM OPINION |
| LES CHRISTOPHER BURNS, *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Les Christopher Burns' ("Burns" or "Defendant") Motion to Dismiss Superseding Indictment with Prejudice or, in the Alternative, Motion for New Trial. Dkt. 542. Burns claims that the Government, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), suppressed information concerning Investigator Christopher Cook's misconduct with a grand jury witness. Accordingly, Burns argues he is entitled to dismissal of the indictment or a new trial.

Finding that the Government suppressed—from both Defendant and the Court—material impeachment evidence about its chief witness, I will deny Burns' motion for dismissal but grant his motion for a new trial.

## I.      Background

### A.      The "Pain Train" Investigation

Sarah Dryden ("Dryden"), a Bedford City Police Officer, conducted a routine traffic stop on October 26, 2012. The occupants of the vehicle were Les Burns and Jonathan Kara. Dkt. 461 at 2–3. Dryden discovered narcotics in the vehicle and arrested Burns. *Id.* at 4–5. After his arrest, Burns told Dryden that he would like to work as a confidential informant in hopes of

receiving leniency. *Id.* at 5–6. Dryden relayed Burns' request to Investigator Christopher Cook ("Cook") who was spearheading an ongoing investigation of a prescription drug trafficking group investigators called the "Pain Train." Cook agreed to use Burns as an informant in this investigation. *Id.* at 5.

During the investigation, Cook learned Burns was "playing both sides of the field," so when the investigation ended, he arrested Burns on March 27, 2013 for his involvement in the conspiracy. Dkt. 366 at 84. Burns was read his *Miranda* rights at the police station. Cook, along with the case prosecutor, Assistant U.S. Attorney ("AUSA") Ashley Neese ("Neese"), interviewed Burns, who allegedly made self-incriminating statements. Dkts. 366 at 7 & 468. On December 19, 2013, a grand jury in the Western District of Virginia indicted eleven individuals in an eight-count Superseding Indictment. Dkt. 126. Count One charged Burns with conspiracy under 21 U.S.C. §§ 841 and 846. *Id.*

B.    Cook's Misconduct and the Government's Response

On April 15, 2013, Neese learned that Cook had engaged in misconduct during the Pain Train investigation. In particular, the attorney for a grand jury witness ("EC") told Neese that Cook had met "unofficially" with EC on or about December 8, 2012. EC claimed that Cook picked her up in his police vehicle and began drinking alcohol. Moreover, he: (1) told EC that he was not married when in fact he was; (2) kissed EC; (3) tried to pull EC onto his lap, causing her knee to hit the emergency brake; (4) "unbuttoned and unzipped his pants and was playing with his penis"; (5) told EC that she was a target of the Pain Train investigation when she was only a witness; and (6) stated to EC that if she was arrested he would give her a "strip search." Dkt. 550-1 at 6–7, 36–40. Neese did not disclose this potentially impeaching evidence to Burns; however, Cook was immediately terminated from his involvement in the Pain Train investigation

and was reassigned.   The Bedford County Sheriff also demoted Cook.

On December 6, 2013, Jennifer Bockhorst, a fellow AUSA and in-house *Giglio* expert, reviewed EC's claims. She emailed Neese, instructing her that the documents "need[ed] to be turned over" and "I don't see what else there is to talk about." Dkt. 556-9 at 3.   Neese did not comply because she claims that: (1) the prosecution did not intend to call Cook at Burns' trial; (2) she interpreted Department of Justice policies to prevent this disclosure; and (3) she read the Privacy Act to also preclude disclosure because of the embarrassment that it would bring Cook. Neese was reassigned to a new *Giglio* expert, AUSA Elizabeth Wright, after Bockhorst's email.

C.       Pretrial Proceedings Regarding Cook's Conduct

As trial approached, Burns filed a Motion to Suppress on May 5, 2014, seeking to exclude evidence of his confession to Cook.   Dkt. 324. He claimed his confession was coerced by Cook and Neese.  *Id.*

Eight days later, the Government filed an Ex Parte Sealed Motion for In Camera Review of Potential *Giglio* Material, asking the Court whether disclosure of Cook's actions was necessary.   Dkt. 339.   The motion pertained to Cook's misconduct as a member of the sheriff's offices in Botetourt and Bedford counties. In Botetourt County, Cook was investigated for misuse of the Virginia Criminal Information Network (VCIN).   He was not indicted, but instead resigned and subsequently was hired by Bedford County.

The Bedford County misconduct related to Cook's meetings with EC.  Despite having EC's detailed account of the incident, the Government provided this Court with only a bare summary of Cook's encounter with EC—innocuously describing the conduct as flirtatious—that omitted significant details, such as Cook's lewd actions and his false statements to EC.[1]   Dkt.

---

[1] At the hearing on this motion, Neese testified that her "superiors" directed her to provide

– 3 –

339 at 7.

Moreover, at the Ex Parte hearing, the Government submitted seventeen pages of documents detailing the Botetourt County misconduct. However, the Government presented *no* testimony or documentation concerning Cook's Bedford County misconduct, stating it did not "particularly want to ask [Cook] any questions" about the topic. Dkt. 513 at 14.

Despite the Government's soft-peddling, on May 14, 2014, I entered an Ex Parte Order finding that "Cook's [Bedford County misconduct] occurred during the course of conduct involving Burns, involved a witness in the same overall investigation, and were officially deemed inappropriate, . . . this information does 'tend to impeach,' and that it therefore 'must be disclosed to the defendant due to *Giglio*.'" Dkt. 350. Two days later, the Government submitted a letter to Burns' attorney in response to my order concerning the information I determined needed to be disclosed. The Government's letter failed, however, to provide more than a summary description of Cook's misconduct similar what was provided to me—lacking details and containing mischaracterizations—in the Ex Parte motion. *Compare* dkt. 339 *with* dkt. 550-2. Significantly, it omitted reference to Cook's lewd behavior with EC and his false statements to her. *Id.*

On May 20, 2014, at the hearing on the Motion to Suppress Burns' confession, the Government sought to prohibit Burns from cross-examining Cook about the Bedford County misconduct, arguing that—even though its disclosure was required—it should be excluded on evidentiary grounds. In support of her motion, Neese stated to the Court: "you're the fact finder in this and know everything that's going on behind that." Dkt. 366 at 2.

At the suppression hearing, Cook took the stand and testified that Burns made post-

the summary. However, the *Giglio* officer, AUSA Wright, testified that she simply reviewed the summary that Neese had drafted and otherwise was unaware of the details of Cook's misconduct.

*Miranda* admissions about his involvement in the Pain Train conspiracy. Burns also testified and denied making many of the incriminating statements. Dkt. 366 at 85, 89, 91–98, 108–09. Burns' wife further testified that—while she was never threatened by Officer Cook or Neese— Detective Dryden made a comment concerning "taking" her job and children that she "perceived" as a threat "at the time"; she, in turn, told Burns of this threat. *Id.* at 45-47, 49, 52.

Burns did admit that he confessed to taking a data storage card from a Government-issued device when he was making controlled buys as an informant because, he claims, he was threatened. *Id.* at 93. Finally, Burns admitted that "[a] lot of stuff in there is truth [sic] as far as how I met Bryant Reynolds or who I was getting pills from. . . ." *Id.* at 94. I denied Burns' Motion to Suppress. Dkt. 364.

D. Burns' Trial and Sentence

At Burns' trial, the Government called Cook as its second witness. Cook described Burns' theft of the Drug Task Force's data storage card and his purported confession. Dkt. 468 at 10–11; 16–21. Before cross-examination, I prohibited Burns' counsel from asking questions relating to Cook's misconduct with EC, because I found that the information made available did not "go to the truthfulness of the witness."[2] *Id.* at 36–37.

Detective Dryden and other Government witnesses also testified and linked Burns to the Pain Train distribution network. Dkt. 461 at 19–22, 57–61; Dkt. 462 at 28–30, 56–59, 71–75, 85–86, 100–03, 112–16, 126–40, 148–51, 163–67, 187–89; Dkt. 469 at 17–18. The jury returned a guilty verdict as to Count One against Burns. Dkt. 514 at 87.

I sentenced Burns on October 30, 2014. Dkt. 479. At his sentencing hearing, I imposed a

---

[2] As discussed above, I was unaware that Cook lied to EC about his marital status and that she was going to be arrested. Ultimately, I made this ruling without fully understanding the nature of Cook's misconduct. As originally described to me, I was under the impression that Cook's misconduct was merely flirtatious, innocuous behavior.

Case 6:13-cr-00022-NKM Document 580 Filed 07/14/16 Page 5 of 14 Pageid#: 6662

two-level enhancement for obstruction of justice, finding that Burns stole the data storage card. U.S.S.G. § 3C1.1; Dkt. 499 at 53–54. Based on an offense level of 30 and criminal history III, I sentenced Burns to 136 months in prison. Dkt. 479.

        E.        <u>Burns' Appeal</u>

On direct appeal, Burns' new counsel requested the underlying documents concerning Cook's misconduct. After divulging this information one week before Burns' opening brief was due in the Court of Appeals, the Government requested a remand to this Court so that I could consider the *Giglio* and *Brady* material the prosecution had failed to disclose. Dkt. 534. The Fourth Circuit granted the Government's request for remand. Following the remand, Burns filed this Motion to Dismiss Superseding Indictment or, in the Alternative, Motion for a New Trial. Dkt. 542.

**II.      Legal Standards for Prosecutorial Misconduct under *Brady/Giglio***

When the government makes a post-conviction disclosure of *Brady* and *Giglio* material while the case is on direct appeal, a remand is warranted so that the trial court may consider the matter in the first instance and create a reviewable record. *See United States v. Dyess*, 478 F.3d 224, 231 (4th Cir. 2007). Under *Brady* and *Giglio*, a prosecutorial misconduct claim has three components:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also Banks v. Dretke,* 540 U.S. 668, 691 (2004); *United States v. Parker*, 790 F.3d 550 (4th Cir. 2015); *Wolfe v. Clarke*, 691 F.3d 410, 423 (4th Cir. 2012). The knowledge of federal and state agents working with the prosecution is imputed to the government's counsel under *Brady* and *Giglio*. *Kyles v. Whitley*, 514 U.S. 419,

437 (1995).

### III. Analysis of Prosecutorial Misconduct Violating *Brady/Giglio*

#### A. Favorability of the Evidence

Evidence is "favorable to the accused" under *Brady*[3] if it is either exculpatory or impeaching. *Strickler*, 527 U.S. at 281–82. More specifically, the Supreme Court has held that evidence which would be "advantageous" to the defendant qualifies under *Brady*. *Banks*, 540 U.S. at 691.

In *Davis v. Alaska*, the Supreme Court noted that cross-examination consists of two separate functions. 415 U.S. 308 (1974). First, cross-examination can be used to generally attack the witness' credibility for truthfulness. *Id.* 316–17. Second, cross-examination can be directed toward "revealing possible biases, prejudice, or ulterior motives of the witness as they may relate directly to issues . . . in the case at hand." *Id.* The second function—revealing bias, prejudice, or ulterior motives—is protected by the Sixth Amendment. *Id.* However, the first function is governed by Federal Rule of Evidence 608(b). *Id.*

In this case, evidence of Cook's misconduct could be used to attack his credibility for truthfulness.[4] Under this function, two specific instances of Cook's misconduct would be useful. First, Cook lied to EC concerning his marital status. Second, he lied to EC about her role in the investigation, stating she was a likely target of the investigation, even though EC was "not being discussed as a likely target of the investigation." Dkt. 550 at 14.

In addition, Cook's repugnant, on-duty conduct (*e.g.*, drinking in uniform, sexually

---

[3] Any reference to *Brady* or *Giglio* refers to the analysis provided through both cases, which can be referred to as "*Brady* and its progeny."

[4] The Government contends that I would have used my discretion to limit this testimony from being admitted at trial. This is not true, as I would likely have admitted the evidence at trial.

assaulting a witness in his squad car) could be used generally to attack the soundness of his investigation. Considering Cook's abuse of power over a citizen in this very case, a jury could reasonably question Cook's judgment as a police officer and the validity of his investigation. *See, e.g.,* dkt. 550-1 at 36–40 (describing Cook's statements to EC that she was a potential target of the investigation and he would be the person to arrest EC and perform a thorough "strip search" on her).

For these reasons, the evidence of Cook's misconduct with EC is favorable to the Defendant because it could be used to Defendant's advantage to impeach Cook. *Strickler*, 527 U.S. at 281–82; *Banks*, 540 U.S. at 691.

### B. Government Suppression

The second component of a *Brady* violation requires that the prosecution suppress the favorable evidence. *Strickler*, 527 U.S. at 281–82. Elaborating on this component, the Ninth Circuit has stated:

> Evidence is suppressed where it is known to the State and not disclosed to the defendant. The State's duty to disclose is affirmative; it applies even though there has been no request by the accused. . . . Once the prosecutor acquires favorable information, even if she inadvertently fails to communicate it to the defendant, evidence has been suppressed.

*Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) (internal citations and quotations omitted); *see also Strickler*, 527 U.S. at 281–82 (suppression occurs "either willfully or inadvertently").

In this case, prosecutors indisputably suppressed the evidence concerning Cook's misconduct. On April 15, 2013, EC's attorney made prosecutors aware of the "unofficial meetings" with Cook. However, prosecutors did not make Defendant or the Court aware of this evidence until May 13, 2014. Even when the prosecutors did make the Court and Defendant

– 8 –

aware, they consciously provided only a skeletal summary of the meeting—characterizing the contact as flirtatious what might be more appropriately called sexual assault—and left out important and significant details, such as Cook's lies to EC.

The Government's actions also directly contravened my May 14, 2014 Ex Parte Order. Dkt. 350. In that order, I expressly stated that "Cook's actions occurred during the course of conduct involving Defendant, involved a witness in the same overall investigation, and were officially deemed inappropriate, . . . this information does 'tend to impeach,' and that it therefore 'must be disclosed to the defendant due to *Giglio*." *Id.* At that point, the Government was under a court-ordered obligation to turn over all the evidence that it had available concerning Cook's misconduct to the Defendant.[5] Even with this obligation, prosecutors mischaracterized the contact and provided truncated summaries that omitted important details.

In sum, the Government's actions satisfy the second component of a *Brady* violation. *Strickler*, 527 U.S. at 281–82.

C.    Prejudice

The third component of a *Brady* violation requires that the defendant show that prosecutors' suppression of favorable evidence was prejudicial. *Strickler*, 527 U.S. at 281–82. Sufficient prejudice exists, for *Brady* purposes, if the suppressed evidence was "material." *Comstock v. Humphries*, 786 F.3d 701, 710 ("The suppression of favorable evidence is prejudicial if that evidence was 'material' for *Brady* purposes."). Evidence "is material if there

---

[5] The Government contends that it followed Department of Justice procedures and concerns over the Privacy Act, 5 U.S.C. §§ 552a, *et seq.* While DOJ policies and the Privacy Act are considerations, neither allows the Government to forego its constitutional obligations under *Brady*. Furthermore, these policies do not allow the Government to directly contravene my order. *See id.* at §552a(b)(11) (describing the court-of-competent-jurisdiction exception to the Privacy Act).

is a reasonable probability that its disclosure would have produced a different result." *United States v. Parker,* 790 F.3d 550, 558 (4th Cir. 2015) (internal quotations omitted). This requirement is met when "the government's evidentiary suppression undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see also Weary v. Cain,* __ U.S. __ , 136 S.Ct. 1002, 1007 (2016).[6]

I find that the failure to disclose Cook's misconduct "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434. Cook was the only trial witness to provide testimony concerning Burns' purported confession after his arrest. This confession, as with any confession to a law enforcement official, provided strong evidence[7] for the jury to find Burns guilty of conspiracy to possess with intent to distribute and to distribute various Schedule II and III prescription drugs, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. Dkt. 126.

The Government also realized the importance of Cook's testimony, using it as a cornerstone of closing argument:

> The second witness you heard from on Monday was Officer Chris Cook. He testified that the defendant had confessed to distributing pills; Mr. Burns confessed that he gave pills to lots of people.

---

[6] Defendant suggests that the prosecutor's "bad faith" should be a factor in determining prejudice. *United States v. Mitchell*, 365 F.3d 215, 255 (3rd Cir. 2004). However, the Fourth Circuit has stated, albeit in dicta, that bad faith is not a proper consideration. *Brown v. French*, 147 F.3d 307, 312–13 (4th Cir. 1998); *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 559 (4th Cir. 1999).

[7] *See Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) ("A confession is like no other evidence. [It] is probably the most probative and damaging evidence that can be admitted against [a defendant]. . . . The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.") (internal quotations omitted); *Grueninger v. Va. Dep't of Corrections*, 813 F.3d 517, 531 & n.11 (4th Cir. 2016) (evidence of confession has "devastating and pervasive effect" on defendant); *United States v. Ince*, 21 F.3d 576, 583 (4th Cir. 1994) (same); *see also Bies v. Sheldon*, 775 F.3d 386, 402 (6th Cir. 2014).

Mr. Snook [Burns' trial counsel] said in his opening that the conspiracy charged in the indictment would not be corroborated by a single unbiased witness. Well, the second witness we heard from was Officer Cook. And he testified that Mr. Burns confessed that he was right in the middle of this pill ring, distributing and receiving pills from the witnesses that you heard from on Monday and Tuesday.

Dkt. 514 at 25, 32. Supreme Court case law "instructs that the 'likely damage' from the suppression of *Brady* evidence 'is best understood' by reference to the prosecutor's closing arguments." *See Comstock,* 786 F.3d at 711 (9th Cir. 2015) (*citing Kyles*, 514 U.S. at 444).

Furthermore, Cook's testimony concerning Burns' confession was strengthened because Cook was never impeached, as Defendant did not have the suppressed evidence at issue. *See supra* pp. 4-6, 8–9. Many of the Government's witnesses were impeached, as the Government admitted in closing argument. Dkt. 514 at 32 ("Well, it is certainly true that several of [the Government witnesses] pleaded guilty to conspiracy to distribute assorted pills."). These witnesses and co-conspirators had active plea deals that would lower their sentences based on their cooperation. *Id.* ("And some [of the Government witnesses] are hoping for a reduced sentences by cooperating with the Government."). But Cook remained untainted by his own undisclosed conduct, allowing the Government to capitalize on a purported confession through an unimpeached investigator. *Comstock*, 786 F.3d at 711 ("We have held that impeachment evidence is material 'if it could have been used to impeach a key prosecution witness sufficiently to undermine confidence in the verdict.'"); *see also Paradis v. Arave,* 240 F.3d 1169, 1179 (9th Cir. 2001); *United States v. Sedaghaty,* 728 F.3d 885, 900 (9th Cir. 2013) ("[W]e zero in on whether the suppressed materials could have provided an effective means of impeachment.").

Therefore, the Defendant is entitled to a new trial because he can establish that prejudice ensued—*i.e.*, "confidence in the outcome of the trial" was undermined, *Kyles*, 514 U.S. at 434—from the Government's failure to provide a complete account of Cook's misconduct. *See, e.g.,*

*Wearry,* 136 S.Ct. at 1006; *see also Burgos*, 94 F.3d at 857.

## IV.   Remedy for *Brady*/*Giglio* violation

Because I have found a *Brady* violation that prejudiced Defendant, I must fashion a remedy.   Defendant's motion requests two alternative remedies: (1) the dismissal of his indictment, or (2) a new trial.

The dismissal of an indictment due to prosecutorial misconduct is an exercise of the Court's general supervisory powers concerning the administration of justice.  The Court should not consider dismissal unless it finds that the defendant suffered prejudice.  *United States v. Derrick*, 163 F.3d 799, 806 (4th Cir. 1998) (citing *United States v. Hastings*, 461 U.S. 499, 505 (1983)).  But even if—as here—prejudice is found, the sanction of dismissal requires conduct "so outrageous as to shock the conscience of the court."  *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007) (quoting *United States v. Osborne*, 935 F.2d 32, 36 (4th Cir. 1991)).  Due to this high standard, the Fourth Circuit has "emphasized that these claims will be recognized only in rare cases."  *Id.* (citing *United States v. Jones*, 18 F.3d 1145, 1154 (4th Cir. 1994).

This is not the "rare case" requiring dismissal, although it is close.   Instead, the constitutional violation here can be remedied with a new trial where Burns will have available to him the suppressed impeachment evidence.  *Derrick*, 163 F.3d at 809 ("Thus, any prejudice that arguably existed as a consequence of discovery violations is fully remedied by this court's orders of new trials.") (*citing United States v. Borokinni,* 748 F.2d 236, 237 (4th Cir. 1984)).

Therefore, I will not dismiss the indictment but will grant Burns a new trial.  *Dyess*, 478 F.3d at 234.

## V.   Counsel's Lack of Candor to the Court

At the hearing on the instant motion, the Government requested that I find its actions

– 12 –

(*i.e.*, the actions of its counsel, Ashley Neese) to be in "good faith." Counsel's intent does not bear on whether a *Brady* violation occurred. *See supra* footnote 6. But it must be noted that I cannot find the Government acted in good faith, which leads me to fashion an additional remedy.

The Government knew of relevant impeachment evidence under *Brady*/*Giglio*, and it suppressed that evidence from Burns. The Government's own in-house *Giglio* expert plainly told its counsel that the evidence was *Giglio* material and needed to be disclosed.

Furthermore, the Government squarely violated my May 14, 2014 Ex Parte order specifically requiring it to turn over the evidence.

Lastly, at the suppression hearing, AUSA Neese stated that I "kn[e]w everything that's going on" regarding Cook's misconduct. Dkt. 366 at 2. In fact, Neese had no reason to believe that I knew any more details of Cook's actions than she provided in the Ex Parte motion—namely, her diluted and sanitized account that Cook and EC had been flirtatious and engaged in some kissing.

From these misrepresentations, omissions, and evasions, it is clear that the Government's main concern was to insulate its principal witness from damaging and embarrassing cross-examination, rather than disclosing the impeachment evidence as the Constitution and my Ex Parte Order required. The totality of the circumstances surrounding the suppression leads to the conclusion that this mistake was not an inadvertent oversight.

In sum, the Government failed to exhibit candor toward this Court and has compromised the validity of Burns' conviction. The United States Attorney therefore is directed to remove Neese as counsel in this case, so that the interests of justice may be better served. *See United States v. Shaffer Equip. Co.,* 11 F.3d 450 (4th Cir. 1993) (finding that dismissal was too severe of a sanction for Government's breach of the duty of candor to the tribunal); *Bills v. United States*,

– 13 –

11 F. App'x 342, 342-43 (4th Cir. 2001) (affirming order precluding attorney from further appearing in a case or future cases); *United States v. Gotti*, 322 F. Supp. 2d 230, 237 (E.D.N.Y. 2004) ("[G]overnment lawyers have a higher, competing duty to act in the public interest.").

## VI.    Conclusion

Defendant has shown that prejudice ensued from the withholding of the information concerning Cook. *Kyles*, 514 U.S. at 434. Accordingly, his Motion to Dismiss the Superseding Indictment with Prejudice or, in the Alternative, Motion for New Trial (dkt. 542) will be granted in part and denied in part; specifically, he will be granted a new trial and an appropriate order will issue.

Entered this __14th__ day of July, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Case 6:13-cr-00022-NKM   Document 580   Filed 07/14/16   Page 14 of 14   Pageid#: 6671